**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MOUSSA KOUYATE, on behalf of himself, all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>            v.<br><br>BAI BRANDS, LLC,<br><br>    Defendant. | Case No.: 1:24-cv-03993<br><br>Hon. Arun Subramanian |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**
**<u>COMPLAINT (DKT. 14)</u>**

**FITZGERALD MONROE FLYNN, PC**
JACK FITZGERALD
*jftizgerald@fmfpc.com*
TREVOR FLYNN (*Pro Hac Vice*)
*tflynn@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

*Attorneys For Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................... 1

LEGAL STANDARD ................................................................................................... 1

FACTS ........................................................................................................................... 2

ARGUMENT ................................................................................................................. 3

    I.    Plaintiff Plausibly Alleges Bai Deceives Reasonable Consumers ..................... 3

       A.    "No Artificial Sweeteners" is Materially Misleading ................................... 4

          1.    Stevia Leaf Extract is an Artificial Sweetener ................................. 5

          2.    Monk Fruit Extract is Artificial and a Sweetener............................. 9

          3.    Erythritol is an Artificial Sweetener............................................... 11

       B.    Plaintiff Suffered Injury Resulting from the Deception .............................. 12

    II.    Plaintiff Has Adequately Alleged Fraudulent Intent Under Rule 9(b)............. 15

    III.   Plaintiff Has Standing to Seek Injunctive Relief............................................. 17

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
404 F.3d 566 (2d Cir. 2005)...................................................................................16

*Aguiar v. Merisant Co.*,
2014 WL 6492220 (C.D. Cal. Mar. 24, 2014) ..........................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................1

*Axon v. Florida's Nat. Growers, Inc.*,
813 F. App'x 701 (2d Cir. 2020) ...........................................................................13

*Baron v. Pfizer, Inc.*,
840 N.Y.S. 2d 445 (N.Y. App. Div. 2007) .............................................................13

*Belfiore v. Procter & Gamble Co.*,
94 F. Supp. 3d 440 (E.D.N.Y. 2015) .....................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................7

*Bensky v. Indyke*,
2024 WL 3676819 (S.D.N.Y. Aug. 5, 2024).............................................................1

*Brunts v. Hornell Brewing Co.*,
2023 WL 3568650 (E.D. Mo. May 19, 2023) ........................................................12

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996)..................................................................................17

*Cohen v. JP Morgan Chase & Co.*,
498 F.3d 111 (2d Cir. 2007)....................................................................................4

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) ..............................................................13, 14

*Colpitts v. Blue Diamond Growers*,
527 F. Supp. 3d 562 (S.D.N.Y. 2021)...............................................................14, 15

*Crawford v. Franklin Credit Mgmt. Corp.*,
758 F.3d 473 (2d Cir. 2014)....................................................................................3

*DeCoursey v. Murad, LLC*,
   2023 WL 3478459 (N.D.N.Y. May 16, 2023).................................................................18

*Duchimaza v. Niagara Bottling, LLC*,
   619 F. Supp. 3d 395 (S.D.N.Y. 2022).........................................................................18

*Goldman v. McMahan, Brafman, Morgan & Co.*,
   706 F.Supp. 256 (S.D.N.Y. 1989) .............................................................................17

*Greene v. Gerber Prod. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) .....................................................................16, 17

*Hawkins v. Coca-Cola Co.*,
   654 F. Supp. 3d 290 (S.D.N.Y. 2023).........................................................................8, 9

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020)..............................................................................4

*Hughes v. Ester C Co.*,
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) .......................................................................12

*Iglesias v. Ariz. Beverages USA, LLC*,
   2023 WL 4053803 (N.D. Cal. June 16, 2023) ....................................................8, 9, 12

*In re Chantix (Varenicline) Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*,
   2024 WL 2784234 (S.D.N.Y. May 28, 2024) ...............................................................14

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ...............................................................15

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
   897 F.3d 88 (2d Cir. 2018)...........................................................................................13

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006).........................................................................................17

*MacNaughton v. Young Living Essential Oils, LC*,
   67 F.4th 89 (2d Cir. 2023) .........................................................................................1, 4

*Mancuso v. RFA Brands, LLC*, 454 F. Supp.
   3d 197 (W.D.N.Y. 2020) ...............................................................................................3

*Mantikas v. Kellogg Co.*,
   910 F.3d 633 (2d Cir. 2018).....................................................................................4, 19

*Mayor & City Council of Balt. v. Citigroup, Inc.*,
709 F.3d 129 (2d Cir. 2013)................................................................1

*Milan v. Clif Bar & Co.*,
489 F. Supp. 3d 1004 (N.D. Cal. 2020) ..............................................18

*Morales v. Kimberly-Clark Corp.*,
2020 WL 2766050 (S.D.N.Y. May 27, 2020) .............................18, 19

*Noohi v. Kraft Heinz Co.*,
2020 WL 5554255 (C.D. Cal. July 20, 2020).......................................8

*Petrosino v. Stearn's Prod., Inc.*,
2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ....................................19

*Rodriguez v. Hanesbrands Inc.*,
2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018).....................................15

*Roper v. Big Heart Pet Brands, Inc.*,
510 F. Supp. 3d 903 (E.D. Cal. 2020)..................................................8

*Tarzian v. Kraft Heinz Foods Co.*,
2019 WL 5064732 (N.D. Ill. Oct. 9, 2019)...........................................7

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...........................................................................16

*United States v. Eisenberg*,
2023 WL 8720295 (S.D.N.Y. Dec. 18, 2023) ......................................5

*Valencia v. Snapple Beverage Corp.*,
2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ......................................8

*Viggiano v. Hansen Nat. Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) ................................................11

*Viggiano v. Johnson & Johnson*,
2015 WL 12860480 (C.D. Cal. June 12, 2015) ..................................12

*Watt v. Energy Action Educ. Found.*,
454 U.S. 151 (1981)............................................................................12

**Statutes**

7 U.S.C.A. § 6502 (22) ....................................................................................................4

N.Y. Gen. Bus. L. § 349 ..................................................................................................3

N.Y. Gen. Bus. L. § 349(a) ..............................................................................................3

N.Y. Gen. Bus. L. § 350 ..................................................................................................3

**Regulations**

21 C.F.R. § 101.22(a)(3) ..................................................................................................9

21 C.F.R. § 182.20 ...........................................................................................................9

38 Fed. Reg. 20,718 (Aug. 2, 1973).................................................................................10

## INTRODUCTION

This is a consumer fraud class action alleging a straightforward theory of deception: Defendant Bai Brands, LLC ("Bai") uses a "No Artificial Sweeteners" label claim to market its line of sweetened, flavored waters (the "Bai Waters"). That claim is false and deceptive, however, because Bai Waters are sweetened with Stevia Leaf Extract, Monk Fruit Extract, and Erythritol, each an artificial sweetener. In moving to dismiss the Complaint, *see* Dkt. No. 14, Mot. to Dismiss ("Mot."), Bai primarily quibbles with Plaintiff's allegations that the ingredients are artificial and, in the case of Monk Fruit Extract, denies that it is a sweetener at all. But the pleading stage is not the time to resolve these factual disputes, and Bai's remaining arguments in support of dismissal are meritless. Because Plaintiff plausibly alleges consumer deception, economic harm, and risk of future harm absent an injunction, the Court should deny Bai's motion in its entirety.

## LEGAL STANDARD

Complaints should not be dismissed where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint need not contain 'detailed factual allegations,' but it must include 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bensky v. Indyke*, 2024 WL 3676819, at *2 (S.D.N.Y. Aug. 5, 2024) (Subramanian, J.) (quoting *Ashcroft*, 556 U.S. at 678). In deciding a motion to dismiss, courts must "accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023) (quoting *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)).

1

## FACTS

Bai labels the Bai Waters with a graphic and text telling consumers the product contains "No Artificial Sweeteners." Compl. ¶ 8. That representation is false, however, because "the Bai Waters have been sweetened with both (i) Stevia Leaf Extract, and (ii) either (a) Erythritol or (b) Monk Fruit Extract," *id*., each of which is a man-made, artificial ingredient, *id*. ¶ 1. *See also id*. ¶¶ 17-21 (alleging that "each of the three sweeteners challenged herein are artificial").

Stevia leaves may be found in nature, but Stevia Leaf *Extract* is the result of an industrial process that yields a crystalized, concentrated powder. *Id*. ¶ 22; *see also id*. ¶¶ 23-32 (detailing the industrial process that creates Stevia Leaf Extract). Similarly, Monk Fruit may be found in nature, but Monk Fruit *Extract* is highly processed, and subjected to harsh industrial methods to yield evaporated extract, which is then spray-dried to result in an extremely sweet, concentrated powder. *Id*. ¶¶ 33-37. Erythritol, of the kind used in food and beverage manufacturing, is also an industrially-manufactured artificial sweetener, which is rendered utilizing liquefaction, saccharification, protein filtration, ion exchange chromatography, crystallization, centrifugation, and industrial drying. *Id*. ¶¶ 38-44. These processes remove residual sugars, organic acids, and other impurities, resulting in a sweetener that may slightly resemble polyols found in nature, but the manufactured Erythritol in the Bai Waters is much higher purity and concentration. *Id*. ¶ 42.

Plaintiff purchased Bai Waters for several years under the mistaken belief they were sweetened with no artificial ingredients. *Id*. ¶¶ 45-46. He would not have purchased them, or only would have paid less, had he known the truth: that Bai Waters are sweetened with artificial, synthetic ingredients. *Id*. ¶ 48. This deception was purposeful, for Bai's financial benefit. "[S]urveys have shown that 'natural' type label claims are some of the most compelling labeling claims to consumers" because "[c]onsumers desire natural ingredients in foods," and, as a result,

2

"are willing to pay more for foods marketed as containing no artificial ingredients." *Id*. ¶¶ 13-15. Bai knows that using "natural" claims creates significantly greater profit margins for low-cost consumer goods, which is a "strong value proposition" for manufacturers like Bai. *Id*. ¶¶ 11-12. Unfortunately, consumers like Plaintiff "lack the meaningful ability to test or independently ascertain the truthfulness of foods and beverages labeled as containing 'No Artificial Sweeteners,' especially at the point of sale." *Id*. ¶ 16. Consumers "would not know the true nature of each and every ingredient by merely reading the ingredient label, which requires investigation beyond the grocery store, and knowledge of food chemistry beyond that of an average consumer," and instead, "must and do rely on food companies like Bai to honestly report the nature of a food's ingredients." *Id*. Thus, when it comes to claims like "No Artificial Sweeteners," consumers are particularly vulnerable to being deceived and, as a result, will overpay for foods and beverages falsely bearing such claims. *Id*.

## **ARGUMENT**

### I.   **Plaintiff Plausibly Alleges Bai Deceives Reasonable Consumers**

New York's General Business Law provides that "[d]eceptive acts or practices" and "[f]alse advertising" in "the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are . . . unlawful." N.Y. Gen. Bus. L. ("GBL") §§ 349(a), 350. "[T]o state a claim under either New York GBL § 349 (which prohibits deceptive business practices) or § 350 (which prohibits false advertising), plaintiff must allege that the defendant engaged in: (1) consumer-oriented conduct; (2) that was materially misleading; and that (3) plaintiff suffered actual injury as a result of the allegedly deceptive conduct." *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 204 (W.D.N.Y. 2020) (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014)). "'The New York Court of Appeals has adopted an objective definition

3

of "misleading," under which the alleged act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances."'" *MacNaughton*, 67 F.4th at 96 (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quotation omitted)); *see also Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). "Dismissal is warranted only in a 'rare situation' where 'it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (quotation and citations omitted).

Only the second and third prongs under the GBL are at issue in Bai's motion to dismiss. *See* Mot. at 7-13; *see also* Dkt. No. 15-1, Chart in Supp. of Def.'s Mot. at 2 (not challenging element that "Defendant's deceptive acts were directed at consumers"). As discussed below, Plaintiff satisfies both by plausibly alleging "No Artificial Sweeteners" is materially misleading and that, as a result, he suffered actual injury.

### A.    "No Artificial Sweeteners" is Materially Misleading

Whether "No Artificial Sweeteners" is materially misleading depends on whether any (not all) of the three challenged ingredients are artificial. The "term 'artificial' is defined by Merriam-Webster as 'humanly contrived . . . often on a natural model: MAN-MADE.'" Compl. ¶ 17 (citation omitted). Merriam-Webster defines "synthetic" to mean "of, relating to, or produced by chemical or biochemical synthesis especially: ***produced artificially***." *Id*. ¶ 18. (citation omitted and emphasis added). Thus, "artificial" and "synthetic" are synonymous, as Plaintiff alleges. *See id*.

Congress defines "synthetic" as "a substance that is formulated or manufactured by a chemical process or ***by a process that chemically changes a substance extracted from naturally occurring plants***, animals, or mineral sources . . . ." *Id*. ¶ 19 (emphasis added); *see also* 7 U.S.C.A. § 6502 (22)  (defining "synthetic"). Reasonable consumers, including Plaintiff, understand and

expect "No Artificial Sweeteners" to mean a food is not sweetened with any man-made ingredient, including ingredients extracted from something naturally occurring, if the manufacturing process subjects the natural source to a chemical or biochemical process. *Id*. ¶ 20.

Because each of the challenged ingredients are (1) artificial and (2) sweeten the Bai Waters, they are artificial sweeteners. Thus, "No Artificial Sweeteners" is literally false. The Court should not now determine, as a matter of law, that Plaintiff's allegations on these two points are "impossible," nor resolve the Parties' factual disputes at this stage. *See United States v. Eisenberg*, 2023 WL 8720295, at *3 (S.D.N.Y. Dec. 18, 2023) (Subramanian, J.) ("[i]n any event, the Court cannot resolve the classification of MNGO Perpetuals or USDC one way or the other at this juncture, given that these calls can't be made without a factual record" (citation omitted)).

### 1. Stevia Leaf Extract is an Artificial Sweetener

To make Stevia Leaf Extract, dried stevia leaves are steeped in hot water to extract glycosides. Compl. ¶ 22. The glycoside-enriched water is then filtered so the remaining material can be isolated and purified. *Id*. After the glycosides are extracted from the plant, and the liquid is evaporated, it is further clarified by either chemical- or electro-coagulation and filtering in industrial tanks. *Id*. ¶ 24. The water extracted from the coagulation stage is then filtered by an industrial filter press to remove coagulated contaminants. *Id*. ¶ 25. The solution is then further "clarified through (i) an activated carbon filter, (ii) a cation exchange column, then (iii) an anion exchange column." *Id*. ¶ 26. The clarified and filtered solution is then "passed through a special macro-porous non-ionic resin column, during which time the steviol glycoside in the water gets adsorbed on the resin surface, which becomes saturated with steviol glycoside." *Id*. ¶ 27. Then, "a water-immiscible solvent, such as pure ethanol, is . . . passed through the column" and the "solvent takes up the steviol glycoside from resin." *Id*. ¶ 28. "The resulting alcoholic solution of steviol

5

glycoside is then concentrated with a nanofiltration membrane device." *Id*. ¶ 29. "The resulting mixture is then further purified through a series of industrial processes" including the removal of alcoholic TSG syrup, further evaporation, and further condensing. *Id*. ¶ 30. The TSG syrup is decolorized and then spray-dried. *Id*. ¶¶ 31-32.

Accepting these allegations as true, it is plausible reasonable consumers would find the industrial process resulting in the manufactured "Stevia Leaf Extract" to be "of, relating to, or produced by chemical or biochemical synthesis *especially*: produced artificially." *See id*. ¶ 18 (quoting Merriam-Webster). It is also plausible reasonable consumers would find the ingredient to be "manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources," and thus, under Congress' definition, "synthetic." *See id*. ¶ 19.

For example, in *Aguiar v. Merisant Co.*, the plaintiff alleged that a product sweetened with "a highly processed, high-purity **stevia extract**" was falsely labeled as a natural sweetener. 2014 WL 6492220, at *2 (C.D. Cal. Mar. 24, 2014) (emphasis added). In moving to dismiss, the defendants argued "no reasonable consumer could be misled by PureVia's 'natural' claim or its packaging . . . ." *Id*., at *5. In denying the motion, the Court noted how reasonable consumers could plausibly believe "natural" to mean the product did not contain "man-made, synthetic ingredients" that were "subject to harsh chemical processes," *id*. That is what Plaintiff alleges here: the Bai Waters' Stevia Leaf Extract, while *sourced* from something natural, was subsequently extracted into a high-purity extract powder through harsh chemical processes, resulting in something "man-made," *i.e.*, "synthetic," "artificial," and certainly not "natural." Compl. ¶¶ 22-32. That Plaintiff's allegations are plausible is supported by the FDA's definition of synthetic,

which includes ingredients resulting from a "process that chemically changes a substance extracted from naturally occurring plants," *see id*. ¶ 19.

The Court should also reject Bai's argument that "Plaintiff draws no connection between the processes described in the Complaint and the sweeteners Bai actually uses in the Bai Waters." Mot. at 9. Plaintiff alleges in detail how Stevia Leaf Extract, at large, is industrially produced, *see* Compl. ¶¶ 22-32, which necessarily includes the Stevia Leaf Extract in the Bai Waters. Bai's assertion that the photos and graphics are not of the exact industrial tanks and machines used to manufacture the particular Stevia Leaf Extract it uses, Mot. at 10-11, misses the point. The images were included for demonstrative, contextual purposes. Whether the tanks, decolorization machines, or nanofiltration devices depicted in the Complaint are a different size, color, or configuration as those used to make the Bai Waters' Stevia Leaf Extract does not change that *all* Stevia Leaf Extract is "artificial," "synthetic," and "man-made." *See* Compl. ¶¶ 17-19, 22-32. The Court, of course, must accept these factual allegations as true at this stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

The cases Bai offers in support of its argument, *see* Mot. at 9-11, are inapposite. In *Tarzian v. Kraft Heinz Foods Co.*, the court found allegations that "industrial citric acid is artificial because it is ***usually*** produced through the industrial fermentation process" and that "it is ***more economically viable*** to produce citric acid for industrial use through this fermentation process" were "insufficient to link fermented citric acid to that used in Capri Sun." 2019 WL 5064732, at *1, *4 (N.D. Ill. Oct. 9, 2019) (emphasis added). Here, Plaintiff does not allege Stevia Leaf Extract is only ***usually*** manufactured in a particular manner, or that there are more expensive alternatives to manufactured Stevia Leaf Extract that Bai could have utilized. Rather, Plaintiff alleges Stevia

7

Leaf Extract is, by definition, manufactured by industrial processes resulting from harsh chemical treatments to isolate, purify, and concentrate sweet glycosides. *See* Compl. ¶ 22. *Cf. Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *3 (C.D. Cal. July 20, 2020) (distinguishing *Tarzian* on a similar basis); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 914 (E.D. Cal. 2020) ("[e]ven if [the offending chemical] . . . could be made naturally, here plaintiff alleges that th[is] ingredient[] w[as] not produced naturally, and the court must accept those non-conclusory factual allegations of the complaint in the light most favorable to plaintiff" (citations omitted)).

In *Valencia v. Snapple Beverage Corp.*, the complaint suffered the same defect as in *Tarzian*, with the court finding the "[p]laintiff's 'generalized statement about [the production of citric acid] . . . not enough to adequately allege the citric acid used in the Product[s] is industrially produced.'" 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024) (quotation omitted). Thus, *Valencia* stands for the unremarkable proposition that a "Plaintiff's *bare* claim" that citric acid *can be* "made from mold rather than citrus fruit . . . absent any allegation specific to the Products," is not enough. *Id*. (emphasis added).

Similarly, in *Hawkins v. Coca-Cola Co.*, the district court dismissed because the complaint "ma[d]e[] bare, unsubstantiated allegations" about the mere "possibility" that the product contained artificial ingredients "without any additional factual support," 654 F. Supp. 3d 290, 305 (S.D.N.Y. 2023). This is inapposite to Plaintiff's allegations here. *Cf. Iglesias v. Ariz. Beverages USA, LLC*, 2023 WL 4053803, at *4 (N.D. Cal. June 16, 2023) ("Plaintiff has sufficiently alleged that HFCS is a synthetic ingredient that is present in Defendant's Products and that a reasonable consumer would find the 'All Natural' label on the Products deceptive based on the presence of HFCS"). *Hawkins* is inapposite for the additional reason that there was disagreement as to what chemical was even in the product, whether artificial DL-Malic acid or natural L-Malic acid, and

8

the plaintiff's allegations did not clarify that confusion. 654 F. Supp. 3d at 305-306. Here, there is no dispute the Bai Waters contain Stevia Leaf Extract.

Because each of the Bai Waters during the last six years were sweetened with Stevia Leaf Extract, *see* Compl. ¶ 8, the Court should deny Bai's Motion. *See Iglesias*, 2023 WL 4053803, at *4 (rejecting argument that "Plaintiff has not sufficiently alleged how the HFCS in Defendant's Products is made" nor "sufficiently alleged a connection between unnatural HFCS manufacturing processes generally and the HFCS used in Defendant's Products" because "Plaintiff alleges that HFCS is a synthetic compound[ and] there is nothing in the record to suggest that it is naturally occurring").

### 2.    Monk Fruit Extract is Artificial and a Sweetener

For all the reasons explained above, Monk Fruit Extract is also an artificial, synthetic ingredient. *See* Compl. ¶¶ 33-37. Bai also argues that because the Bai Waters' ingredient list refers to Monk Fruit Extract as a "natural flavor," and not a "sweetener," Plaintiff's allegations that Monk Fruit Extract is an artificial sweetener is *disproven*. *See* Mot. at 3, 12-13. That is wrong.

First, it appears Bai mislabels the Monk Fruit Extract as a "natural flavor" under the relevant regulations. "Natural flavor" means the:

> essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional. Natural flavors include the natural essence or extractives obtained from plants listed in §§ 182.10, 182.20, 182.40, and 182.50 and part 184 of this chapter, and the substances listed in § 172.510 of this chapter.

21 C.F.R. § 101.22(a)(3). But § 182.20, which defines the "essential oils, oleoresins (solvent-free), and natural extractives (including distillates)" that qualify as "natural flavors," does not include monk fruit as a source plant. *See id.* § 182.20 (identifying approximately 150 different botanical

9

sources that are included in the definition, but not listing monk fruit). Nor does monk fruit (or its other botanical names) appear in any other subsection incorporated by reference into 21 C.F.R. § 101.22(a)(3). This makes sense because natural flavors are meant to contribute a specific *taste* profile (like cinnamon), rather than to *sweeten* (like sucrose). *See* 38 Fed. Reg. 20,718, 20,720 (Aug. 2, 1973) ("Sweeteners are not spices or flavors"). Rather than provide a specific taste profile in foods, according to the FDA, Monk Fruit Extracts are "100 to 250 times sweeter than sugar" and are "intended for use as general-purpose sweeteners and as tabletop sweeteners."[1] *See* Compl. ¶ 33 (alleging Monk Fruit Extract is a sweetener, in that it "creates a sweetness sensation 250 times stronger than sucrose"). As a result, Monk Fruit Extract does not fit within the FDA's definition of "natural flavor," and thus Bai's misbranding does not form a defense to liability here, as it believes.

Even if Bai *could* properly label Monk Fruit Extract as a "flavor," its assertion that this would allow it to avoid liability should be rejected. If Bai were correct, any manufacturer could label any food as containing "No Artificial Sweeteners" and simply add parenthetical "flavor" language to any ingredient—as Bai has done here for Monk Fruit Extract—even those ingredients that sweeten the product, and escape liability for the deceptive conduct. Because "consumers are willing to pay more for products with natural claims, including 'No Artificial Sweeteners,'" *see id.* ¶ 11, food manufacturers would effectively have free license to overcharge consumers.

The case Bai primarily relies on, *Viggiano v. Hansen Nat. Corp.*, is distinguishable because the question there was whether the label claim "all natural flavors" was *preempted* under federal

---

[1] *See* U.S. Food & Drug Admin., *Aspartame and Other Sweeteners in Food, Plant and Fruit Based Sweeteners*, *Extracts from Siraitia grosvenorii Swingle fruit, also known as Luo Han Guo or Monk Fruit*, *available at* https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food.

labeling laws. *See* 944 F. Supp. 2d 877, 889-90 (C.D. Cal. 2013) ["*Hansen*"]. There, the plaintiff challenged the phrase "all natural flavors" despite the product containing two allegedly synthetic ingredients, acesulfame potassium and sucralose. *Id*. at 881. Based on an extensive review of federal labeling laws, including with respect to 21 U.S.C. § 343(k)'s definitions of "[a]rtificial flavoring, artificial coloring, or chemical preservatives," and regulations specific to "natural flavor," "artificial flavor," and "characterizing flavor," the court found that because "Hansen's soda cans refer specifically to natural flavors, not natural ingredients," the plaintiff's claims were preempted. *Id*. at 886-93; *see also id*. at 892 ("Hansen's labeling of its diet soda conforms to FDA regulations, and any state law that requires different or additional labeling is preempted. Accordingly, Viggiano's UCL, FAL, and CLRA claims are dismissed."). Here, Plaintiff alleges "No Artificial Sweeteners" is false and misleading because the Bai Waters contain artificial sweeteners, but unlike in *Hansen*, Bai does not and cannot argue Plaintiff's claim is preempted.

### 3. Erythritol is an Artificial Sweetener

Erythritol is also an artificial sweetener. It is a type of carbohydrate called a sugar alcohol, or polyol. Compl. ¶ 38. Extraction of erythritol from its natural sources, like fruits or vegetables, is not practical because of their low erythritol contents. *Id*. And in contrast to other polyols, erythritol cannot be produced via chemical synthesis in a cost-effective manner due to the needed high temperatures as well as the fact that nickel catalysts result in a cost-ineffective reaction with a low product yield. *Id*. Because it cannot be efficiently extracted or synthesized from natural sources, ***all*** Erythritol used in food and beverage manufacturing, including in the Bai Waters, "must be artificially manufactured." *Id*. Thus, Plaintiff adequately alleges the Erythritol in the Bai Waters is "artificial." Consistent with this, multiple courts have found Erythritol to be synthetic.

11

For example, In *Viggiano v. Johnson & Johnson*, the defendant "advertised Nectresse® as both a natural sweetener and primarily made from the monk fruit plant." 2015 WL 12860480, at *1 (C.D. Cal. June 12, 2015) ["*Viggiano*"]. However, the court found, "Nectresse® is composed primarily of **erythritol, a synthetic ingredient**," and thus not all natural. *Id*. (emphasis added). As a result, the court rejected the defendant's motion to dismiss based, in part, on its assertion that no reasonable consumer would be misled by the "natural" labeling. *Id*., at *3. *See also Iglesias*, 2023 WL 4053803, at *3 ("Plaintiff's allegations are sufficient to establish that a reasonable consumer could plausibly conclude that a beverage labeled as 'All Natural' should not include," among other things, "**erythritol**" (emphasis added)); *Brunts v. Hornell Brewing Co.*, 2023 WL 3568650, at *4 (E.D. Mo. May 19, 2023) ("[c]learly, reasonable consumers do not expect ingredients such as . . . **erythritol** or any of the various 'natural flavors' to be present in products labeled 'All Natural' or '100% Natural'" and, "[c]onsequently, those ingredients render the 'All Natural' and '100% Natural' claims false, misleading and deceptive" (emphasis added)).

Because at least some of the Bai Waters were sweetened with Monk Fruit Extract or Erythritol during the last six years, *see* Compl. ¶ 8, the Court should deny Bai's Motion. *See Viggiano* 2015 WL 12860480, at *1 (finding plausible claims that "all natural" was false and misleading where sweetener was comprised, in part, of "a highly chemically processed and purified form of monk fruit extract" and Erythritol, "a synthetic ingredient").

### B.      Plaintiff Suffered Injury Resulting from the Deception

"Economic injury suffices as a form of injury-in-fact that meets the first element of standing." *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 453 (E.D.N.Y. 2013) (citing *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 161 (1981)). Plaintiff alleges he "would not have purchased the Bai Waters, or would not have been willing to pay the price he paid, if he knew that the 'No

12

Artificial Sweeteners' labeling claim was false and misleading in that the product contains artificial sweeteners." Compl. ¶ 48. He also alleges "[t]he Bai Waters cost more than similar products without misleading labeling and would have cost less absent Bai's false and misleading statements and omissions." *Id*. ¶ 49; *see also id*. ¶ 11 ("As Bai knows, consumers are willing to pay more for products with natural claims, including 'No Artificial Sweeteners.'"). As a result, the "Bai Waters were worth less than what Plaintiff and the Class paid for them." *Id*. ¶ 51. Thus, "[Plaintiff] has suffered an injury-in-fact because []he purchased products bearing allegedly misleading labels and sustained financial injury – paying a premium – as a result." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703-704 (2d Cir. 2020) (citing *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 92 (2d Cir. 2018)). "As for statutory standing, [Plaintiff] has alleged that 'the price of the product was inflated as a result of defendant's deception,' which meets the injury requirement." *Id*. at 704 (quoting *Baron v. Pfizer, Inc.*, 840 N.Y.S. 2d 445, 448 (N.Y. App. Div. 2007)).

Bai's argument that these allegations are insufficient, including, for example, Plaintiff's supposed failure to allege "what price he paid for the products, or the price of nonpremium products," Mot. at 7, is contrary to Second Circuit precedent: "[Plaintiff]'s failure to identify the prices of competing products to establish the premium that she paid 'is not fatal to his claim' at this stage of the proceedings." *See Axon*, 813 F. App'x at 704 (alteration omitted) (quoting *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 481-82 (S.D.N.Y. 2014) (collecting cases)); *see also Small v. Lorillard Tobacco Co.*, 94 N.Y. 2d 43, 56 (1999).

The authorities on which Bai relies, *see* Mot. at 7, are distinguishable. The first, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120 (E.D.N.Y. 2018), is inapposite, and to the extent it may be relevant here, is contrary to *Axon*, a later-decided Second Circuit Memorandum decision.

The second, *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021), actually *supports* the plausibility of Plaintiff's allegations regarding injury here.

In *Colella*, which, as noted above predates *Axon*, the district court found that while "[p]ayment of a premium for a product based on inaccurate representations may be sufficient to allege injury under Sections 349 and 350," the plaintiff failed to plausibly allege such injury. 348 F. Supp. 3d 120, 142-43. But *Colella* rejected the plausibility of the plaintiff's allegations of economic harm because they ran contrary to the "broader context of his complaint," specifically, that he "failed to allege that the offending label was actually present on 'any of [defendant's] products he alleges he purchased, and, instead allege[d] that an "identical or substantially *similar* claim appears" on [such] product[s].'" *In re Chantix (Varenicline) Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 2024 WL 2784234, at *9 (S.D.N.Y. May 28, 2024) (quoting and distinguishing *Colella*). *Collela* "demonstrate[s] that a plaintiff's failure to allege certain details in connection with a consumer transaction may be sufficient to undercut the plausibility of that plaintiff's allegations that he or she actually purchased a product." *Id*. But *Collela* and other relevant case law "do not, however, set forth the details necessary to plausibly plead a compensable injury in the context of a consumer transaction; concluding as much would effectively impose a heightened pleading standard beyond that which is required by the Federal Rules of Civil Procedure." *Id*.

Curiously, Bai also relies on *Colpitts*, 527 F. Supp. 3d at 578, n.7, to argue Plaintiff's allegation that "he would not have paid as much as he did without the supposedly false statement" is insufficient. Mot. at 7. But in *Colpitts*, the court *rejected* the defendant's argument "that Plaintiff fails to adequately allege a price premium injury because he 'does not allege or identify: (a) the specific price he paid; (b) competitors' products for the price premium; or (c) how those products

14

are purportedly comparable to the [a]lmonds.'" 527 F. Supp. 3d at 578 (record citation omitted). Requiring these specifics at the pleading stage, the *Colpitts* court found, would "demand[] more than the law requires" and "[n]umerous courts in this Circuit have 'found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations.'" *Id*. (quoting *Rodriguez v. Hanesbrands Inc.*, 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018) (collecting cases)). Notably, *Colpitts* also distinguishes *Collela* (as well as *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016), upon which *Collela* relied), in Plaintiff's favor. *See id*. at 578 n.7 ("In *Izquierdo*, the court found that the plaintiffs did not allege a cognizable injury, because, among other reasons, the complaint . . . did not allege that the plaintiffs paid a higher price for the product than they would have absent the defendant's allegedly deceptive conduct" (citing 2016 WL 6459832, at *7)).

In sum, "Plaintiff alleges that '[h]ad plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.' These allegations adequately plead a price premium injury to support Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims." *Colpitts*, 527 F. Supp. 3d at 578 (record citation omitted).

## II.     Plaintiff Has Adequately Alleged Fraudulent Intent Under Rule 9(b)

Bai advances three arguments for why the Court should dismiss Plaintiff's intentional misrepresentation claims. *First*, Bai says, Plaintiff "fails to allege the first element of an intentional misrepresentation claim—that Bai made a material misrepresentation of fact or omission." Mot. at 14. *Second*, Bai argues that because "Plaintiff has not plausibly alleged he suffered an 'actual injury' as required for the GBL claims, the injury element of the fraud claim similarly fails." *Id*. *Third*, Bai argues Plaintiff's allegations "are not pled with particularity as required by New York law and Federal Rule of Civil Procedure 9(b), 'which requires pleadings to "state with particularity

15

the circumstances constituting the alleged fraud.""" *Id*. (citations omitted).

The first two arguments are easily disposed of for the same reasons already discussed: *first*, Plaintiff plausibly alleges "No Artificial Sweeteners" was false and misleading under GBL §§ 349 and 350 because the Bai Waters are sweetened with artificial ingredients. *Second*, Plaintiff suffered an "actual injury," in the form of overpaying for the Bai Waters. As for the *third* argument, the Court should reject Bai's claim that "the Complaint . . . contains mere conclusory allegations regarding the second and third elements of an intentional misrepresentation claim—knowledge and intent," Mot. at 16, because, as explained below, Bai is wrong.

Bai's argument that Plaintiff fails to allege scienter is contrary to the Complaint, which alleges that, "[a]s the manufacturer of Bai Waters, Bai knew the true nature of the ingredients it purchased and included in its finished products." Compl. ¶ 82. It is also common sense that, because Bai manufactures the Bai Waters, it "knew, or was reckless in not knowing, that the ingredients it chose to utilize were artificial." *Id*.

Bai also misapplies the law and holds Plaintiff to too high a standard at the pleading stage. The Second Circuit has held that "[a]s to scienter," even "conclusory assertions of intent are sufficient 'if supported by facts giving rise to a strong inference of fraudulent intent.'" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 579 (2d Cir. 2005) (quotation omitted). Because "[g]reat specificity as to scienter is not required," Plaintiff need only provide "a minimal factual basis for [his] conclusory allegations of scienter" to satisfy Rule 9(b). *See Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017) (quotation and internal quotation marks omitted) (citing, *inter alia*, *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (a reviewing court "must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing

16

inference?")). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (quotation omitted). Even "'[a]n egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness.'" *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (quoting *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F.Supp. 256, 259 (S.D.N.Y. 1989) (citation omitted)).

Because Plaintiff plausibly alleges Bai knew the challenged ingredients are artificial, man-made, industrially-processed, concentrated powders not found in nature, *and* used them to sweeten the Bai Waters (notwithstanding its dubious characterization of Monk Fruit Extract as a "flavor"), it thus also knew that its prominent label claim "No Artificial Sweeteners" was false. *See* Compl. ¶¶ 77-80. Bai also knows "consumers are willing to pay more for products" labeled with "No Artificial Sweeteners" type claims. *Id.* ¶ 11. Bai chose to label the Bai Waters with "No Artificial Sweeteners" despite knowing that was false, and in doing so knew that consumers would pay more for them, so there is a strong inference of "conscious misbehavior or recklessness." *See Greene*, 262 F. Supp. 3d at 73-74 (quotation and record citation omitted). Accordingly, "Plaintiff[] ha[s] sufficiently pled facts to support an inference of fraudulent intent." *See id.* at 74; *see also Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 456 n.8 (S.D.N.Y. 2007) ("Plaintiffs need not plead both 'motive and opportunity' *and* 'conscious misbehavior or recklessness' to prove scienter. One is sufficient.")

## III. Plaintiff Has Standing to Seek Injunctive Relief

Bai asserts Plaintiff's request for injunctive relief should be dismissed because he lacks

standing. Mot. at 16-20. Specifically, Bai argues Plaintiff has not sufficiently alleged he will purchase the Bai Waters and be deceived again. *Id*. Bai is wrong.

Plaintiff alleges he would "purchase the products in the future if they, in fact, contained 'No Artificial Sweeteners' as represented." Compl. ¶ 54. Relying on *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 410 (S.D.N.Y. 2022), Bai argues this allegation is insufficient because it uses the conditional word, "if." *See* Mot. at 17-18. But *Duchimaza* is not binding, and "[o]ther courts, including in this Circuit, have concluded that plaintiffs have standing to seek prospective injunctive relief when they assert that they will purchase a product in the future if it is altered, as Plaintiff[ ] ha[s] alleged here." *See DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 224 (N.D.N.Y. 2023) (finding plaintiffs had "sufficiently alleged future injury" where they "state[d] that they would purchase the Affected Murad Products again if they were safe for use in the manner directed or re-labeled" (record citation omitted) (citing, *inter alia*, *Morales v. Kimberly-Clark Corp.*, 2020 WL 2766050, at *5 (S.D.N.Y. May 27, 2020) (holding that the plaintiff had standing where she alleged that she would buy the product at issue again "if she were assured that any purported defects were identified and eliminated"))).

Bai's alternative argument that, because Plaintiff is a past purchaser, he cannot be deceived again, "is a rather cynical application of the old adage, 'fool me once, shame on you; fool me twice, shame on me.'" *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020). "The problem for [Bai] is that plaintiff[] ha[s] called into plausible question [the No Artificial Sweeteners label claim] and ha[s] alleged [he] will be unable to trust the representation[]" absent an injunction. *See id*. (internal record citation and quotations marks omitted); *see also id*. ("[c]onsequently, the Court declines at this pleadings stage of the case to conclude that plaintiffs cannot, as a matter of law, ever be deceived again").

18

In short, "Plaintiff would purchase Bai Waters in the future if he could trust that the 'No Artificial Sweeteners' claims were true and not false or misleading, but absent an injunction, Plaintiff will be unable to trust the representations on the products when he encounters them in the marketplace." Compl. ¶ 54. Unless enjoined, Bai would be free to continue deceptively labeling the Bai Waters "at the stores where [Plaintiff] regularly shops." *Id*. ¶ 45. When Plaintiff continues to see the Bai Waters labeled as "No Artificial Sweeteners," he could not know whether it has been reformulated to make that claim true, or whether Bai is continuing to falsely advertise them. Plaintiff (and other consumers) should not have to inspect the ingredient list, and simultaneously understand the nature of every possible sweetening ingredient, in order to evaluate the truthfulness of the label. *See Mantikas*, 910 F.3d at 637 ("a reasonable consumer should not be expected to consult the Nutrition Facts panel . . . to correct misleading information set forth in large bold type on the front of the box" (citation omitted)).

Alternatively, the Court should permit Plaintiff to pursue injunctive relief on behalf of absent class members. *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf" and even though it is "unlikely [plaintiff] will re-purchase the product again . . . he has standing"); *see also Morales*, 2020 WL 2766050, at *5 ("[T]he Court concludes that, at the very least, standing under G.B.L. § 349 is sufficiently established by allegations that Plaintiff would purchase a product again in the future if changes were implemented by a defendant. To hold otherwise 'would effectively neuter any attempt at seeking class-wide injunctive relief,'" (quoting *Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349 at *5 n.3 (S.D.N.Y. Mar. 30, 2018))).

19

## CONCLUSION

The Court should deny Bai's Motion, but if it grants the Motion in any respect, Plaintiff respectfully requests that dismissal be without prejudice and with leave to amend.

Dated: August 26, 2024

/s/ Trevor Flynn
**FITZGERALD MONROE FLYNN, PC**
JACK FITZGERALD
*jftizgerald@fmfpc.com*
TREVOR FLYNN (*Pro Hac Vice*)
*tflynn@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

20