**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MOUSSA KOUYATE, on behalf of himself, all others similarly situated, and the general public,

    Plaintiff,

          v.

BAI BRANDS, LLC,

    Defendant.

Case No.: 1:24-cv-03993

Hon. Arun Subramanian

**PLAINTIFF'S OPPOSITION TO BAI'S**
**SECOND MOTION TO  THE DISMISS COMPLAINT (DKT. 35)**

**FITZGERALD MONROE FLYNN, PC**
JACK FITZGERALD
*jftizgerald@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

*Attorneys For Plaintiff*

## **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ...........................................................................................................1

LEGAL STANDARD ...................................................................................................................2

RELEVANT PROCEDURAL HISTORY ...................................................................................3

FACTS ............................................................................................................................................3

ARGUMENT ..................................................................................................................................5

      I.    Plaintiff Adequately Alleges Article III Standing .......................................................5

      II.   Bai's Extrinsic Evidence is Immaterial to Standing ...................................................7

CONCLUSION ............................................................................................................................10

## TABLE OF AUTHORITIES

Cases

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  2016 WL 1241533 (S.D.N.Y. Mar. 28, 2016) ....................................................... 6

*Alonso v. Saudi Arabian Airlines Corp.*,
  1999 WL 244102 (S.D.N.Y. Apr. 23, 1999) ......................................................... 2

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016) ...................................................................................... 7

*Clark v. Blue Diamond Growers*,
  2023 WL 4351464 (N.D. Ill. July 5, 2023) ......................................................... 10

*Colpitts v. Blue Diamond Growers*,
  2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023) .................................................. 9, 10

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021) .................................................................... 6

*D.J.C.V. v. United States*,
  605 F. Supp. 3d 571 (S.D.N.Y. 2022) .................................................................... 2

*In re Columbia Coll. Rankings Action*,
  2024 WL 1312511 (S.D.N.Y. Mar. 26, 2024) ....................................................... 6

*Izquierdo v. Mondelez Int'l Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................................................ 6

*Katz v. Donna Karan Co., L.L.C.*,
  872 F.3d 114 (2d Cir. 2017) .................................................................................... 2

*Lanovaz v. Twinings N. Am., Inc.*,
  2014 WL 46822 (N.D. Cal. Jan. 6, 2014) .............................................................. 9

*Lenzi v. L.L. Bean, Inc.*,
  2023 WL 8237484 (W.D.N.Y. Nov. 28, 2023) ...................................................... 8

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................ 5

*Morrow v. Ann Inc.*,
  2017 WL 363001 (S.D.N.Y. Jan. 24, 2017) .......................................................... 6

*Nat. Res. Def. Council Inc. v. U.S. Food & Drug Admin.*,
710 F.3d 71 (2d Cir. 2013) ......................................................................................... 6

*Seidemann v. Pro. Staff Cong. Loc. 2334*,
432 F. Supp. 3d 367 (S.D.N.Y. 2020) ......................................................................... 2

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..................................................................................................... 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..................................................................................................... 6

*Weiner v. Snapple Beverage Corp.*,
2011 WL 196930 (S.D.N.Y. Jan. 21, 2011) ................................................................ 9

## SUMMARY OF ARGUMENT

Plaintiff filed this consumer fraud class action in May 2024 alleging a straightforward theory of deception: because Defendant Bai Brands, LLC ("Bai") falsely labels its WonderWater products (the "Products") as containing "No Artificial Sweeteners," its price in the marketplace is inflated so that consumers, including Plaintiff, are economically harmed when purchasing the Products. Dkt. No. 1, Compl. ¶¶ 1, 48-52. Following denial of its first motion to dismiss under Rule 12(b)(6), Bai now asks the Court to dismiss the complaint under Rule 12(b)(1) on the grounds that Plaintiff cannot show he overpaid, or has otherwise suffered any concrete injury, and therefore the Court lacks Article III jurisdiction to hear the case. *See* Dkt. No. 34, Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) ("Mot.").

But Plaintiff plausibly alleges injury-in-fact and Bai offers no extrinsic evidence to rebut those allegations; instead it argues, incorrectly, that "Plaintiff has no evidence showing the price he paid for the Bai Products, or when and where he purchased them." Mot. at 1; *see also id.* at 6 ("Plaintiff has no record at all that he purchased any of the Bai Products"). At most, Bai quibbles with whether Plaintiff's evidence satisfies his burden to prove damages as required by the NY GBL, but that is a merits question. Bai's claim that plaintiff must always have a particular type of evidence, namely *documentary* evidence of his purchases, dates of purchases, and prices paid, is wrong. If that were the standard, few consumer fraud class actions would proceed, as consumers typically do not keep receipts for low-cost, low-salience goods like Bai WonderWater.

Separately, Bai complains Plaintiff "will not sit for deposition," *id*. at 6. But it never even noticed his deposition. And even if Mr. Kouyate ultimately refused to sit for deposition after notice, Bai made no effort to meet and confer as to whether any workable alternatives exist. That Plaintiff has not (and perhaps will not) sit for a deposition may affect his ability to adequately prosecute

1

this case, however, it does not deprive him of Article III standing; and Bai provides no extrinsic evidence in its motion to rebut the allegations that give him standing.

Finally, Bai ignores that Plaintiff may develop the proof required to show a price premium through expert evidence. That Plaintiff has not done this yet does not doom his case, as expert disclosures are not yet due. *See* Dkt. No. 26, Case Management and Scheduling Order (expert disclosures due March 17, 2025).

## **LEGAL STANDARD**

"[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Seidemann v. Pro. Staff Cong. Loc. 2334*, 432 F. Supp. 3d 367, 376 (S.D.N.Y. 2020) (citation omitted). The plaintiffs may simply "'rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" *Id.* (citing *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (internal citations and quotations omitted)). Only "[i]f a defendant supports his fact-based Rule 12(b)(1) motion with material . . . extrinsic evidence," must "a district court . . . make findings of fact in aid of its decision as to subject matter jurisdiction." *Id.* (internal quotation marks and quotation omitted).

When weighing of facts is required, the "standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under Fed.R.Civ.P. 56(e)." *Alonso v. Saudi Arabian Airlines Corp.*, 1999 WL 244102, at *1 (S.D.N.Y. Apr. 23, 1999) (citations omitted). When "the existence or not of subject matter jurisdiction turns on" a factual question, "jurisdictional discovery is necessary." *See D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 590 (S.D.N.Y. 2022); *cf. Katz*, 872 F.3d at 121 ("where a defendant makes a fact-based Rule 12(b)(1) challenge to jurisdiction, we are

2

confident that district courts will oversee the appropriate extent of fact-finding necessary to resolve the contested issue").

## RELEVANT PROCEDURAL HISTORY

Defendant filed this Motion on January 16, 2025. Dkt. No. 34. Knowing that amending the Complaint to add a named plaintiff with proof of purchase would moot Bai's Motion, and believing such notice to be required by the Court's Individual Practices in Civil Cases, Plaintiff filed a Notice of Intent to Amend the Complaint. Dkt. No. 37. Shortly after, Plaintiff also submitted a letter-motion asking the Court to extend his deadline to file this opposition. Dkt. No. 38. The Court denied the request, finding Plaintiff is not entitled to amend as a matter of right and ordering him to, instead, file a motion for leave to amend by February 3, 2025. Dkt. No. 39 The Order did not address Plaintiff's deadline to oppose Bai's Motion and, as a result, Plaintiff timely submits this opposition, but directs the Court's attention to the fact he still intends to move for leave to amend and that such amendment, if permitted, will likely make resolution of this Motion irrelevant.

## FACTS

In October 2024, Bai propounded its first set of interrogatories and requests for production on Plaintiff. Plaintiff timely responded and, following a meet-and-confer concerning deficiencies Bai perceived in his responses, served supplemental responses in December 2024. *See* Dkt. No. 36-2, Ex. B to Decl. of Monica H. Smith ("Smith Decl."). In response to Interrogatory No. 7, Plaintiff averred that he "regularly purchased Bai Puna Coconut Pineapple and Pilavo Pineapple Mango beverages for the last several years." *Id.* at 5. "He purchased one or both of these varieties approximately every 2-3 weeks when he would see them at the stores where he regularly shops" and "typically purchased" them from "Fresh City Deli in the Bronx, from Target in the Bronx, and from Walmart in New Jersey." *Id.* Plaintiff also stated he paid "between $2 and $3 for a single

3

bottle at Target and Walmart and between $3 and $4 for a single bottle at Fresh City Deli," meaning $2 and some change at Target and $3 and some change on Fresh City Deli. *See id.* Each of these purchases was made "under the mistaken belief the [Products] were sweetened with no artificial ingredients." Dkt. No.1, Compl. ¶¶ 45-46. And Plaintiff "would not have purchased them, or only would have paid less, had he known the truth: that Bai Waters are sweetened with artificial, synthetic ingredients." *Id*. ¶ 48.

Plaintiff also alleges "surveys have shown that 'natural' type label claims are some of the most compelling labeling claims to consumers" because "[c]onsumers desire natural ingredients in foods," and, as a result, "are willing to pay more for foods marketed as containing no artificial ingredients." Compl. ¶¶ 13-15. Bai knows that using "natural" claims creates significantly greater profit margins for low-cost consumer goods, which is a "strong value proposition" for manufacturers like Bai. *Id*. ¶¶ 11-12. Reasonable consumers "lack the meaningful ability to test or independently ascertain the truthfulness of foods and beverages labeled as containing 'No Artificial Sweeteners,' especially at the point of sale." *Id*. ¶ 16. Consumers "would not know the true nature of each and every ingredient by merely reading the ingredient label, which requires investigation beyond the grocery store, and knowledge of food chemistry beyond that of an average consumer," and instead, "must and do rely on food companies like Bai to honestly report the nature of a food's ingredients." *Id*. Thus, when it comes to claims like "No Artificial Sweeteners," consumers are particularly vulnerable to being deceived and, as a result, will overpay for foods and beverages falsely bearing such claims. *Id*. None of the extrinsic evidence proffered by Bai— namely, Plaintiff's written discovery responses—contradicts these allegations. *See generally* Smith Decl. Exs. A-C.

4

On January 10, 2025, Bai advised Plaintiff's counsel it intends to depose Mr. Kouyate remotely, and requested available dates during the weeks of January 27 and February 3. Decl. of Trevor Flynn, ¶ 2. Plaintiff provided an available date for his deposition of January 30, which was conveyed to defense counsel. *Id.* Shortly after, however, Plaintiff expressed to his counsel serious concerns about his privacy. In particular, Mr. Kouyate was adamant that he did not want his face and voice recorded. Plaintiff's counsel immediately emailed defense counsel, requesting a call to discuss the issue, and the parties conferred by phone the same day. *Id.* ¶ 3. Plaintiff's counsel was candid in recognizing the issue could affect the case, and discussed with Bai ways in which it might be addressed, for example by stipulating to the substitution of a new plaintiff. *Id.* ¶ 4. Although during the call Bai's counsel seemed amenable to further discussion, it filed the instant motion shortly after, and with no advance notice. *Id.*

## ARGUMENT

### I.    Plaintiff Adequately Alleges Article III Standing

Bai concedes Plaintiff *alleges* he "has standing because he suffered injury in the form of a 'price premium' when he purchased." Mot. at 1. Indeed, Plaintiff alleges he purchased the Bai waters "under the mistaken belief they were sweetened with no artificial ingredients." Compl. ¶¶ 45-46, and "would not have purchased them, or only would have paid less, had he known the truth: that Bai Waters are sweetened with artificial, synthetic ingredients." *Id.* ¶ 48. This is sufficient to plausibly allege economic injury-in-fact and, thus, satisfies Article III standing.

To establish constitutional standing, a plaintiff must only show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing, *inter alia*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The requisite

5

"injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized[;] ... and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). "Economic injuries are, of course, sufficient to meet the injury-in-fact requirement for purposes of standing." *In re Columbia Coll. Rankings Action*, 2024 WL 1312511, at *5 (S.D.N.Y. Mar. 26, 2024) ["*In re Columbia*"] (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ("The most obvious [concrete injuries under Article III] are traditional tangible harms, such as . . . monetary harms."); *Nat. Res. Def. Council Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing."); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 1241533, at *4 (S.D.N.Y. Mar. 28, 2016) (noting that "'***paid too much***' or 'received too little '" claims constitute "classic economic injury-in-fact" (emphasis added)). "A plaintiff can show an economic injury-in-fact by alleging 'an overpayment or "price premium," whereby a plaintiff pays more than she would have but for the deceptive practice,'" *id.* (quoting *Izquierdo v. Mondelez Int'l Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016)), or by alleging that if she had "known the truth," she "would not have purchased a product," *id.* (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021)).

"In line with this precedent, courts in this Circuit have consistently ruled that plaintiffs satisfy the requirements of Article III standing when they plead that defendants' misrepresentations caused them to purchase a product that they otherwise would not have purchased." *Id.* at *8 (collecting cases and citing, *inter alia*, *Morrow v. Ann Inc.*, 2017 WL 363001, at *3 (S.D.N.Y. Jan. 24, 2017) ("Plaintiffs allege that they would not have bought the products absent Ann's advertising, which caused them to spend money they would otherwise not have spent.

6

This injury is concrete, and while it may ultimately prove insufficient to justify relief under the statutes at issue, it is sufficient to confer constitutional standing.")).

Here, Plaintiff alleges he "would not have purchased [Bai's Products] had [he] known about [Bai's] misrepresentations" and thus, the Court should "conclude[] that – for purposes of standing – Plaintiff[] ha[s] sufficiently alleged an injury in fact premised on the claim," *id.* Plaintiff has adequately *pled* Article III standing, and, as explained more fully below, Bai has offered no extrinsic, *controverting* evidence.

## II.    Bai's Extrinsic Evidence is Immaterial to Standing

"[P]laintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). That is the case here. No extrinsic evidence before the court contradicts any of the following relevant allegations: (i) Plaintiff purchased Bai waters during the class period; (ii) When purchasing the Bai Waters, Plaintiff was exposed to, read, and relied upon Bai's labeling claim, "No Artificial Sweeteners"; (iii) Plaintiff believed this claim, which was and is deceptive because the Bai Waters contain artificial sweeteners; and (iv) Plaintiff would not have purchased the Bai Waters, or would not have been willing to pay the price he paid, if he knew that the "No Artificial Sweeteners" labeling claim was false and misleading. *Compare* Compl. ¶¶ 45-48 *with* Smith Decl. Thus, Plaintiff is permitted to rely on his allegations, which, as explained above, plainly demonstrate Article III standing.

The evidence Bai puts forward that it claims requires dismissal under Rule 12(b)(1) does the opposite: it shows that there is no dispute Plaintiff regularly purchased two flavors of the Bai Products over the last several years, typically buying them approximately every 2-3 weeks from a

7

deli, Target, and Walmart, and paying between $2 and $3 for a single bottle at Target and Walmart and between $3 and $4 for a single bottle at the deli. *See* Mot. at 2. While these statements, Bai says, demonstrate a failure to "establish how much he paid for the products at any particular store on any particular date," Mot. at 5-6, that is factually wrong and legally irrelevant. It is wrong because Plaintiff *does* say how much he paid (even if with less specificity than Bai would like); it is irrelevant because it does not contradict Plaintiff's allegations that he bought the Products, relied on the "No Artificial Sweeteners" claims in doing so, and would not have purchased them, or only paid less, if he knew the truth—this is all that is required for Article III standing. *See, supra*, § I.

Bai also claims courts in this district "routinely" dismiss claims premised on facts similar to those here. That is wrong. The three cases Bai relies on are inapposite and, because this is a fact intensive inquiry, irrelevant. First, Bai cites *Lenzi v. L.L. Bean, Inc.*, 2023 WL 8237484 (W.D.N.Y. Nov. 28, 2023) and says the court there dismissed because "[t]he only evidence plaintiff proffered in response to the defendant's factual 12(b)(1) challenge was her own self-serving affidavit recounting the details of her alleged purchase—but she otherwise could not demonstrate she ever purchased the boots and could not even provide a receipt." Mot. at 6. But in *Lenzi*, the defendant *first* produced extrinsic, controverting evidence that the plaintiff never bought the product at all. 2023 WL 8237484, at *2. The defendant's corporate representative produced sales records showing that on the date plaintiff alleged she made the purchase, "only one purchase" was made by a "customer whose first name is not Linda (or any variation thereof), whose last name is not Lenzi, and whose address is located in Indiana," whereas the plaintiff alleged she made her purchase in New York. *Id.* at *1-2. That *Lenzi* rejected what amounted to a sham declaration is neither surprising nor analogous to the facts here. Bai's extrinsic evidence—Plaintiff's statements in written discovery—corroborate Plaintiff's allegations that Plaintiff *did* purchase the Bai waters

8

on multiple occasions, from multiple locations, and paid between $2 and $4 each purchase.

Bai next cites *Weiner v. Snapple Beverage Corp.*, 2011 WL 196930 (S.D.N.Y. Jan. 21, 2011), and says, there, the plaintiffs' allegations they purchased Snapple drinks "for '$1.50 to $1.75, around there,'" and "probably paid $1.79 plus tax or $1.79 total[, or s]omething around there," or "somewhere south of $2" were insufficient to establish a "price premium." Mot. at 7. As Bai concedes, however, *Weiner* was a summary judgment decision subject to the standards of Rule 56, not a motion under Rule 12(b)(1). And it did not grant summary judgment because it found the Plaintiffs lacked standing under Article III, but that the evidence, on a complete record, "failed to establish an injury ***for purposes of [GBL] § 349***." *Weiner*, 2011 WL 196930, at *5 (emphasis added); *cf. Lanovaz v. Twinings N. Am., Inc.*, 2014 WL 46822, at *9 (N.D. Cal. Jan. 6, 2014) (analyzing *Weiner* and concluding it "related to damages as an element of the claim, not standing" and noting that "[a]lthough [plaintiff] may have significant difficulty proving damages, that is not an issue for standing"). Unlike in *Weiner*, discovery is still open here, and Plaintiff has the right and opportunity to marshal evidence of his and other class members' damages with the specificity required by GBL §§ 349 & 350.

Finally, Bai cites *Colpitts v. Blue Diamond Growers*, 2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023) ["*Colpitts II*"], and says that court found plaintiff had not substantiated his allegation that he paid a price premium because he produced no evidence as to the price he paid any occasion. Mot. at 7-8. Like in *Weiner*, Bai pays only lip service to *Colpitts II* being a summary judgment decision, made on a complete factual record, after fact and expert discovery were completed, but that is a significant distinction. *See* Mot. at 8. Prior to summary judgment, the court in *Colpitts II* denied defendant's Rule 12 motion asserting plaintiff lacked Article III standing. *See* 2023 WL 2752161, at *2. Only after discovery closed, did defendant move for summary judgment—*not* on

9

the basis that the plaintiff did not suffer an injury-in-fact, but arguing he could not prove his damages with the specificity required by GBL §§ 349 and 350. *Id.; see also Clark v. Blue Diamond Growers*, 2023 WL 4351464, at *2 (N.D. Ill. July 5, 2023) (rejecting a standing argument made under Rule 12 and finding *Colpitts II* "unhelpful" in that analysis. "First, that order was issued at the summary judgment stage. And second, *Colpitts [II]* held that the plaintiff could not marshal enough evidence to prove an injury, one of the essential elements under New York's consumer protection statute" (record citations omitted)). In *Colpitts II*, the court considered the elements of Article III standing, noting how "[a] plaintiff suffers actual injury if, 'on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Id.* at *4 (quotation omitted). According to the court, this "standard is satisfied by 'an overpayment, or price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'" *Id.* Only after considering the full record, the court found it "contain[ed] no evidence whatsoever" that the challenged label claims created a price premium. *Id.* But here Plaintiff can, but has not yet been afforded the opportunity to, establish a "price premium" through evidence beyond his own personal knowledge, such as Bai's (as of yet unproduced) documents and expert testimony.

## CONCLUSION

The Court should defer ruling on this motion until it rules on Plaintiff's anticipated motion for leave to amend. Should it grant that motion, Plaintiff's amended complaint will likely moot Bai's Motion. Otherwise, the Court should deny the Motion in its entirety.

Dated: January 30, 2025                                  Respectfully Submitted,


                                                         /s/ Trevor Flynn
                                                         **FITZGERALD MONROE FLYNN, PC**

10

JACK FITZGERALD
*jftizgerald@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

11