# ATTACHMENT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

~~MOUSSA KOUYATE~~LANA ZINGER, on behalf of ~~himself~~herself, all others similarly situated, and the general public,

Plaintiff,

v.

BAI BRANDS, LLC,

Case No.: 24-cv-3993

CLASS ACTION

**FIRST AMENDED COMPLAINT FOR CONSUMER FRAUD ~~AND INTENTIONAL MISREPRESENTATION~~**

DEMAND FOR JURY TRIAL

Plaintiff ~~Moussa Kouyate~~Lana Zinger, on behalf of ~~himself~~herself, all others similarly situated, and the general public, by and through ~~his~~her undersigned counsel~~,~~ brings this ~~action~~First Amended Complaint against Bai Brands, LLC ("Bai"), and alleges the following upon ~~his~~her own knowledge, or where ~~he~~she lacks personal knowledge, upon information and belief, including the investigation of ~~his~~her counsel.

## INTRODUCTION

1. Bai markets and sells sweetened, flavored waters that it labels as containing "No Artificial Sweeteners" (the "Bai Waters"). That claim is false, however, because Bai Waters are sweetened with Stevia Leaf Extract, Monk Fruit Extract, and Erythritol, each one an artificial, man-made sweetener.

2. Plaintiff brings this action against Bai on behalf of ~~himself~~herself, similarly situated Class Members, and the general public ~~to enjoin Bai from deceptively marketing the Bai Waters, and~~ to recover compensation for injured Class Members.

## JURISDICTION & VENUE

3. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Bai. In addition, more than two-thirds of the members of the class reside in states other than the state in which Bai is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

4. The Court has personal jurisdiction over Bai because it has purposely availed itself of the benefits and privileges of conducting business activities within New York, including by marketing, distributing, and selling Bai products in New York.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c), because Bai resides (*i.e.*, is subject to personal jurisdiction) in this district, and because a substantial part of the transactions, events~~ or~~, and omissions giving rise to the claims occurred in this district.

## PARTIES

6. Plaintiff ~~Moussa Kouyate~~Lana Zinger is a citizen of New York because ~~he~~she resides in Bayside, New York~~, New York and intends to remain there~~.

7. Defendant Bai is a Texas limited liability company with its principal place of business at 6425 Hall of Fame Lane, Frisco, Texas 75034.

## FACTS

### I. BAI MARKETS ITS FLAVORED WATERS AS CONTAINING "NO ARTIFICIAL SWEETENERS"

8. During at least the six years preceding the filing of this Complaint (the "Class Period") Bai has manufactured, marketed, distributed, and sold the Bai Waters in single bottles and multi-packs. Throughout the Class Period, the Bai Waters have been sweetened with both (i) Stevia Leaf Extract, and (ii) either (a) Erythritol or (b) Monk Fruit Extract. Each Bai Water label prominently states "No Artificial Sweeteners."[1] Exemplars of the labels of the individual bottles, with the claim indicated, appear below. The image on the left indicates the current label, and on the right the previous label, with Bai having made the change in approximately the last year.







[1] The Bai Waters challenged include all flavors, sizes, and varieties bearing the claim "No Artificial Ingredients," including but not limited to Pilavo Pineapple Mango, Zambia Bing Cherry, Molokai Coconut, Brasilia Blueberry, Kula Watermelon, Malawi MangoPuna Coconut Pineapple, Sao Paolo Strawberry Lemonade Madagascar Coconut Mango, Kupang Strawberry Kiwi, Costa Rica Clementine, and Raspberry Lemon Lime by Sidney Sweeney.

9. Exemplars of the Bai Waters multipacks' outer packaging, indicating the claim, appear below.






10. Bai repeats the "No Artificial Sweeteners" claim in other marketing, including on its website:




11. As Bai knows, consumers are willing to pay more for products with natural claims, including "No Artificial Sweeteners."

12. According to Daniel Haley, an industry leader in "clean" labeling, the natural claims trend is an "eye-opener for manufacturers and/or retailers to generate 'significant profit margins, and a very strong value proposition.'"[2]

---

[2] *See* https://www.anti-a.org/news/en/consumers-are-willing-to-pay-more-for-clean-label.

13. Research further found that there is a 40% net gain in consumers wanting products only made with natural ingredients, a 43% gain in those checking labels, and a 29% [net gain] in those looking for products with no artificial ingredients.[3]

14. Other surveys have shown that "natural" type label claims are some of the most compelling labeling claims to consumers.[4]

15. Consumers desire natural ingredients in foods for a variety of reasons, including wanting to live a healthier lifestyle, the perceived benefits in avoiding disease and other chronic conditions, and to avoid chemical additives, among others. As a result, consumers are willing to pay more for foods marketed as containing no artificial ingredients.

16. Reasonable consumers, like Plaintiff, lack the meaningful ability to test or independently ascertain the truthfulness of foods and beverages labeled as containing "No Artificial Sweeteners," especially at the point of sale. Reasonable consumers would not know the true nature of each and every ingredient by merely reading the ingredient label, which requires investigation beyond the grocery store, and knowledge of food chemistry beyond that of an average consumer. Thus, reasonable consumers must and do rely on food companies like Bai to honestly report the nature of a food's ingredients, and food companies like Bai intend and know that consumers rely upon foods labeling statements in making their purchasing decisions.

---

[3] *Id.*

[4] *See, e.g.*, David L. Ter Molen & David S. Becker, "An 'All Natural' Dilemma: As the Market for "All Natural' Foods Continues to Grow, So Do the Risks for the Unwary," at 2 (Nov. 27, 2012).

## II. BAI'S "NO ARTIFICIAL SWEETENERS" CLAIMS FOR THE BAI WATERS ARE FALSE AND MISLEADING

17. The term "artificial" is defined by Merriam-Webster as "humanly contrived . . . often on a natural model: MAN-MADE."[5]

18. Merriam-also defines "synthetic" to mean "of, relating to, or produced by chemical or biochemical synthesis *especially*: produced artificially."[6] Thus, in the context of the challenged sweeteners, and how they are manufactured, "artificial" and "synthetic" are synonymous.

19. Relatedly, Congress defines "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

20. Reasonable consumers, including Plaintiff, thus understand and expect "No Artificial Sweeteners" to mean a food is not sweetened with any man-made ingredient, including any ingredient subject to harsh chemical processes, which renders it artificial.

21. Each of the three sweeteners challenged herein are artificial.

### A. The Stevia Leaf Extract in the Bai Waters is an Artificial Sweetener

22. To make Stevia Leaf Extract, dried stevia leaves are steeped in hot water to extract glycosides: the sweet-tasting parts of the leaf. The water is then filtered so the remaining material can be isolated and purified. The process, and processing aids, produce a crystalized sweet extract of the leaf.

23. The industrial process of extracting steviol glycoside from the stevia plant begins with extraction with hot water. Dry leaves are loaded into a trough, like the one depicted below,

---

[5] *See* http://merriam-webster.com/dictionary/artificial.

[6] *See* https://www.merriam-webster.com/dictionary/synthetic.

hot water from a boiler is added, and leaves are extracted with hot water by thorough mixing. The water extract is then discharged into a holding tank.






24. The liquid extract is then clarified by either chemical- or electro-coagulation and filtering in an industrial tank like the one depicted below.




Step – 2 : Clarification by Electrocoagulation
Water Extract




25. The water extract from the electro-coagulation stage is then filtered by an industrial filter press, like the one depicted below, to remove coagulated contaminants.






26. Next, the filtered water extract is clarified through (i) an activated carbon filter, (ii) a cation exchange column, then (iii) an anion exchange column. The equipment and processes are depicted below.






27. Next, the clarified water extract is passed through a special macro-porous non-ionic resin column, during which time the steviol glycoside in the water gets adsorbed on the resin surface, which becomes saturated with steviol glycoside.



28. As depicted below, a water-immiscible solvent, such as pure ethanol, is then passed through the column. The solvent takes up the steviol glycoside from resin.





29. The resulting alcoholic solution of steviol glycoside is then concentrated with a nanofiltration membrane device, as depicted below.





30. The resulting mixture is then further purified through a series of industrial processes depicted below.






31. A byproduct of this process, alcoholic TSG syrup, is then decolorized, using the equipment and process depicted below.






32. Finally, hot, decolorized alcoholic TSG syrup is spray dried in industrial equipment as depicted below.





**B. The Monk Fruit Extract in the Bai Waters is an Artificial Sweetener**

33. Monk fruit is an herbaceous plant of the gourd family. The plant is cultivated for its fruit extract, which creates a sweetness sensation 250 times stronger than sucrose. Monk Fruit Extract is highly processed in order to get it from the whole small melon to the concentrated powder or liquid used in foods.

34. The first step in the production of Monk Fruit Extract is the harvesting and extraction of the fruit. Mature fruits are harvested, sorted, washed, then crushed to extract the juice, which is filtered to remove solid particles. The filtered juice is then heated to deactivate its enzymes.

35. Next, reverse osmosis is used to remove water molecules, leaving behind a more concentrated juice, which is further purified through chromatography techniques such as ion-exchange and size-exclusion chromatography. These processes separate compounds based on their individual properties.

36. Activated carbon and/or adsorption/separation polymer resin columns are then used to further purify the concentrate by absorbing glycosides. The desired components are then washed from the resin with ethanol, which is subsequently removed by evaporation. If a powder is desired, the resulting liquid is then spray-dried to create the final powder product.

37. A flow chart of the manufacturing process appears below.

[continued]




*Figure 2: Flow diagram of monk fruit extract production (source: application)*

**C. The Erythritol in the Bai Waters is an Artificial Sweetener**

38. Erythritol is a type of carbohydrate called a sugar alcohol, or polyol. Although Erythritol can occur naturally, it is not practical to extract the substance, for commercial purposes, from its natural sources because of the low Erythritol contents of natural foods. Moreover, in contrast to other polyols, Erythritol cannot be synthesized chemically in a cost-effective manner due to the need for a nickel catalyst and high temperatures, combined with low yield. Thus, to be commercially viable, Erythritol must be artificially manufactured.

39. The process of manufacturing Erythritol starts with selecting a carbohydrate-rich feedstock, often derived from corn or wheat starch. The starch is extracted and purified to serve as raw material for fermentation.

40. The purified starch is hydrolyzed into simple sugars (glucose and/or maltose) through enzymatic or acid hydrolysis. This step is crucial, as it provides the fermentable sugars necessary for the subsequent fermentation process. The resulting sugar solution serves as the fermentation medium.

41. The fermentation process is carried out by adding a specific strain of yeast, usually a genetically modified strain of *Moniliella pollinis* or *Trichosporonoides megachliensis*, to the sugar solution. These yeast strains have been engineered to efficiently convert the sugars into Erythritol while minimizing the production of undesirable byproducts. The fermentation is typically conducted in large fermentation tanks under controlled conditions of temperature, pH, and oxygen levels.

42. After the fermentation is complete, the broth containing Erythritol, along with other byproducts and impurities, undergoes a series of purification steps to isolate and purify the Erythritol crystals. Common purification techniques include filtration, ion exchange

chromatography, crystallization, and drying. These processes help remove residual sugars, organic acids, and other impurities, resulting in a higher-purity Erythritol product.

43. The purified Erythritol crystals are then dried to remove any remaining moisture and achieve the desired moisture content for the final product. Once dried, the Erythritol is typically milled into a fine powder or granulated form and then packaged.

44. A flow chart of the manufacturing process for Erythritol appears below.



## III. PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY

45. Plaintiff ~~Moussa Kouyate~~Lana Zinger regularly purchased Bai ~~Puna Coconut Pineapple~~Water in different variety packs online, and ~~Pilavo Pineapple Mango beverages for the last~~in individual bottles in retail stores, in several ~~years. He purchased one or both of these~~ varieties ~~approximately every 2-3 weeks when he would see them at the stores where he~~of flavors, most often Dragon Passion Fruit. Throughout the Class Period, she regularly ~~shops. He~~purchased the Rainforest Variety Pack and Safari Variety Pack online, through Amazon, for which she typically paid $26.99 plus tax. She also regularly purchased ~~the~~ individual bottles of Bai ~~Waters from a deli~~Water at Whole Foods, Duane Reade | Walgreens, Stop & Shop, and CVS stores near ~~his~~her home in ~~the Bronx, from Target in the Bronx, and from Walmart locations~~Bayside, New York, and from Whole Foods, CVS, and Duane Reade | Walgreens stores in Manhattan ~~and New Jersey.~~. For individual bottles, she typically paid between $2 and $3, although she typically paid slightly more at the 7-11 stores where she would occasionally purchase them as well.

46. When purchasing the Bai Waters, Plaintiff was exposed to, read, and relied upon Bai's labeling claim, "No Artificial Sweeteners," which was intended to appeal to consumers, like ~~him~~her, who are interested in foods that contain natural sweeteners. Plaintiff believed ~~this claim~~the label, which ~~was and is deceptive~~communicated that the Bai Waters contained "No Artificial Sweeteners," were sweetened with nothing artificial. Thus, the labels deceived Plaintiff because the Bai Waters contain artificial sweeteners.

47. Plaintiff acted reasonably in relying on the challenged labeling claim, which Bai intentionally placed on the products' labeling with the intent to induce average consumers into purchasing the Bai Waters.

48. Plaintiff would not have purchased the Bai Waters, or would not have been willing to pay the price ~~he~~she paid, if ~~he~~she knew that the "No Artificial Sweeteners" labeling claim was false and misleading in that the product contains artificial sweeteners.

49. The Bai Waters cost more than similar products without misleading labeling and would have cost less absent Bai's false and misleading statements and omissions.

50. Through the misleading labeling claims and omissions, Bai was able to gain a greater share of the market than it would have otherwise and also increase the size of the market.

51. For these reasons, the Bai Waters were worth less than what Plaintiff and the Class paid for them.

52. Plaintiff and the Class lost money as a result of Bai's deceptive claims, omissions, and practices in that they did not receive what they paid for when purchasing the Bai Waters.

~~53. Plaintiff continues to desire to purchase drinks with all-natural non-nutritive sweeteners, and continues to see Bai Waters at stores when he shops. He would purchase the products in the future if they, in fact, contained "No Artificial Sweeteners" as represented, but unless Bai is enjoined in the manner Plaintiff requests, he may not be able to reasonably determine whether the products have been reformulated to conform to the misleading claims (for example, by using non-artificial ingredients), or whether Bai has continued to misrepresent the products.~~

~~54. Plaintiff would purchase Bai Waters in the future if he could trust that the "No Artificial Sweeteners" claims were true and not false or misleading, but absent an injunction, Plaintiff will be unable to trust the representations on the products when he encounters them in the marketplace.~~

## CLASS ACTION ALLEGATIONS

~~55.~~53. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in New York who, at any time during the Class Period, as defined herein, purchased, for personal or household use, and not for resale or distribution, any Bai water products bearing the statement, “No Artificial Sweeteners,” and which contained Stevia Leaf Extract, Monk Fruit Extract, or Erythritol (the “Class”).

~~56.~~54. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

~~57.~~55. Questions of law and fact common to Plaintiff and the Class include:

a. Whether Bai’s conduct complained of herein was consumer-oriented;

b. Whether the statement on the label of the Bai Waters, “No Artificial Sweeteners,” is material, or likely to be material, to a reasonable consumer;

c. Whether the statement on the label of the Bai Waters, “No Artificial Sweeteners,” is false, misleading, or reasonably likely to deceive a reasonable consumer;

d. Whether Plaintiff and other Class Members were injured by Bai’s conduct; and

~~e.~~ The proper amount of damages, including statutory and punitive damages~~;~~ ~~and~~

~~f.~~e. ~~The proper scope of injunctive relief~~.

~~58.~~56. These common questions of law and fact predominate over questions that affect only individual Class Members.

~~59.~~57. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Bai's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased Bai Waters and suffered economic injury because the products were misrepresented. Absent Bai's business practice of deceptively labeling the Bai Waters and omitting material information regarding the artificial nature of their sweeteners, Plaintiff and other Class Members would not have purchased them or would have paid less for them.

~~60.~~58. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods and beverages.

~~61.~~59. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

~~62. Bai has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.~~

~~63.~~60. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Unfair and Deceptive Business Practices, N.Y. Gen. Bus. L. § 349

~~64.~~61. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

~~65.~~62. Bai's conduct constitutes deceptive acts or practices or false advertising in the conduct of business, trade, or commerce or in the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

~~66.~~63. During the Class Period, Bai carried out a plan, scheme and course of conduct that was consumer oriented.

~~67.~~64. As alleged herein, Bai engaged in, and continues to engage in, deceptive acts and practices by advertising, marketing, distributing, and selling Bai Waters with false or misleading "No Artificial Sweeteners" claims and representations, and deceptive omissions.

~~68.~~65. Bai's conduct was materially misleading to Plaintiff and the Class.

~~69.~~66. As a direct and proximate result of Bai's violation of N.Y. Gen. Bus. L. § 349, Plaintiff and the Class were injured and suffered damages.

~~70.~~67. The injuries to Plaintiff and the Class were foreseeable to Bai and, thus Bai's actions were unconscionable and unreasonable.

~~71.~~68. Bai is liable for damages sustained by Plaintiff and the Class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, actual damages or $50 per unit, whichever is greater.

~~Pursuant to N.Y. Gen. Bus. L. § 349(h), Plaintiff and the Class further seek an Order enjoining Bai from continuing to engage in unlawful acts or practices, false advertising, and any other acts prohibited by law, including those set forth in this Complaint.~~

**SECOND CAUSE OF ACTION**

**False Advertising, N.Y. Gen. Bus. L. § 350**

~~72.~~69. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

73.70. Bai has engaged in consumer-oriented conduct that is deceptive or misleading in a material way (both by affirmative misrepresentations and by material omissions), constituting false advertising in the conduct of any business, trade, or commerce, in violation of N.Y. Gen. Bus. L. § 350.

74.71. As a result of Bai's false advertising, Plaintiff and other Class Members have suffered and continue to suffer substantial injury, including damages, which would not have occurred but for the false and deceptive advertising, and which will continue to occur unless Bai is permanently enjoined by this Court.

75. Plaintiff and the Class seek to enjoin the unlawful acts and practices described herein, and to recover the maximum extent allowable under N.Y. Gen. Bus. L. § 350, their actual damages or $500 per unit, whichever is greater, along with reasonable attorney fees.

**THIRD CAUSE OF ACTION**

**Intentional Misrepresentation**

76. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

77. Bai marketed the Bai Waters in a manner conveying to reasonable consumers that the they contain "No Artificial Sweeteners." However, the products contain artificial sweeteners. Therefore, Bai has made misrepresentations about the Bai Waters.

78. Bai's misrepresentations are material to a reasonable consumer because they relate to the naturalness of the sweeteners in the Bai Waters. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making a purchase decision.

~~79. At all relevant times, Bai knew that the misrepresentations were misleading, or has acted recklessly in making the misrepresentations, without regard to their truth.~~

~~80. Bai intends that Plaintiff and other consumers rely on these misrepresentations, as evidenced by the intentional, conspicuous, prominent, central placement of the misleading "No Artificial Sweeteners" representations on the Bai Waters packaging (both the individual bottle label and outer packaging for multi-packs).~~

~~81. As the manufacturer of Bai Waters, Bai knew the true nature of the ingredients it purchased and included in its finished products. Thus, Bai knew, or was reckless in not knowing, that the ingredients it chose to utilize were artificial.~~

~~82. Plaintiff and other Class Members have reasonably and justifiably relied on Bai's intentional misrepresentations when purchasing the Bai Waters. Had the correct facts been known, they would not have purchased the Bai Waters at the prices at which they were offered.~~

~~83. Therefore, as a direct and proximate result of Bai's intentional misrepresentations, Plaintiff and other Class Members have suffered economic losses and other general and specific damages in the amount of the Bai Waters' purchase prices, or some portion thereof, and any interest that would have accrued on those monies, all in an amount to be proven at trial.~~

**PRAYER FOR RELIEF**

~~84.~~72. Wherefore, Plaintiff, on behalf of ~~himself~~herself, all others similarly situated, and the general public, prays for judgment against Bai as to each and every cause of action, and the following remedies:

a. An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

b. An Order requiring Bai to bear the cost of Class Notice;

~~c. An Order compelling Bai to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending products;~~

~~d.~~c. An Order requiring Bai to pay restitutionary, compensatory, statutory, and punitive damages as permitted by law, plus pre-and post-judgment interest thereon;

~~e.~~d. An award of attorneys' fees and costs; and

~~f.~~e. Any other and further relief that the Court deems necessary, just, or proper.

~~[continued]~~

**JURY DEMAND**

~~85.~~73. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 3, 2025

/s/ Trevor Flynn
**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
TREVOR M. FLYNN*
*tflynn@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

~~**phv application forthcoming*~~