UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lana Zinger, on behalf of herself, all others similarly situated, and the general public,<br><br>                              Plaintiff,<br><br>              -against-<br><br>Bai Brands, LLC,<br><br>                              Defendant. | 24-cv-3993 (AS)<br><br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

In this putative consumer class-action against a beverage manufacturer, the plaintiff has failed to show a genuine dispute of material fact on an essential element of her claim. The defendant's motion for summary judgment is thus GRANTED and the pending motions for class certification and to exclude certain experts are DENIED AS MOOT.

## BACKGROUND

At all relevant times, Bai Brands sold flavored waters that were marketed as containing "No Artificial Sweeteners." Dkt. 115 ¶ 91. Moussa Kouyate filed this putative class action against Bai alleging that its label was misleading under New York law and that the Bai beverages did, in fact, have artificial sweeteners. Dkt. 1 at 1.

Bai moved to dismiss the complaint. Dkt. 14. The Court denied the motion as to plaintiff's deceptive-practices and false-advertising claims. Dkt. 27. Bai again moved to dismiss, on subject-matter jurisdiction grounds. Dkt. 34. That motion was also denied, and Lana Zinger was substituted as the plaintiff after Kouyate withdrew from the case. Dkts. 53, 55.

Subsequently, Zinger moved for a class to be certified under Rule 23 of the Federal Rules of Civil Procedure. Dkt. 62. Bai moved for two of Zinger's experts to be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dkts. 76, 77, 78. Those motions are pending before the Court.

Bai subsequently moved for summary judgment. Dkt. 95.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA*

*Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## DISCUSSION

### I.    Zinger fails to raise a triable issue of whether Bai's labeling was misleading

Bai raises several grounds on which it argues it is entitled to summary judgment. The Court focuses on one, which is dispositive of the case.[1]

Zinger's claim is based on New York General Business Law Sections 349 and 350. "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (N.Y. 2012)). The Court focuses on the question of whether Zinger has shown a genuine dispute of material fact over whether Bai's labeling was misleading, a required element of her claim.

"The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 623 N.Y.S.2d 529, 532–33 (N.Y. 1995)). Zinger must thus raise a genuine dispute of material fact over whether the alleged act is likely to mislead a reasonable customer. Following discovery, Zinger has narrowed her claim to focus only on the sweetener erythritol. Dkt. 108-1 ¶¶ 8–9, 23. The Court considers whether there is sufficient evidence to raise a triable issue over whether erythritol would be considered "artificial."

Erythritol is a sugar alcohol, which is found in certain fruits including grapes and pears. *Id.* ¶ 1. The erythritol used by Bai in its products is not extracted from those fruits; instead, it is derived by fermenting corn or sugar. *Id.* ¶¶ 3–4. The crux of the case is whether the erythritol created through fermentation would be seen by a reasonable consumer as "artificial."

Much of the evidence that Zinger points to does not weigh upon whether a reasonable consumer would find erythritol to be artificial. That an academic source refers to erythritol as artificial in passing does not indicate that a reasonable consumer would have the same view. *Id.* ¶ 114. Nor does the fact that the employee of Bai's parent company responsible for procuring erythritol has the title "Senior Global Category Manager – Flavors, Colors, Acidulants, Artificial Sweeteners," *id.* ¶ 109, indicate that a reasonable consumer would view the ingredient as an artificial sweetener. And Zinger's references to manufacturing flow charts, nonbinding FDA guidance, and Bai internal

---

[1] For purposes of the motion for summary judgment, the Court considers all the evidence in the record, assuming without deciding that plaintiff's expert evidence is admissible under Federal Rule of Evidence 702 and *Daubert*.

communications are similarly irrelevant. *Id.* ¶¶ 14–15, 102–107, 110. Whatever probative value that evidence has is too attenuated from a reasonable consumer's perspective. *See Bustamante v. KIND, LLC*, 100 F.4th 419, 433 (2d Cir. 2024) (defendants' internal documents "show only that KIND had its own conception of the term 'All Natural,'" but "do not reveal a <u>reasonable consumer's</u> understanding of that term").

That leaves two final pieces of evidence in the record that Zinger points to. First is the dictionary definition of "artificial" as "made, produced, or done by humans especially to seem like something natural: MAN-MADE." *Id.* ¶ 111. The definition cannot be used to suggest how a reasonable consumer would use the word "natural" for food products and ingredients. *See Bustamante*, 100 F.4th at 433 (holding dictionary definition "gets plaintiffs no closer to demonstrating what a reasonable consumer would expect of a KIND product bearing the 'All Natural' label"). As Bai notes, the definition is so expansive that it would sweep up even sugarcane as being artificial. Dkt. 115 ¶ 111. A children's birthday cake in the shape of a rainbow would be "artificial" under that definition, even if made solely with natural ingredients, since it would have been made by a human to seem like something natural. And since even a loaf of bread would seemingly be "man-made," it would render "artificial" everything other than raw, unprepared food.

The second piece of evidence Zinger cites in her statement of material facts is the report of Chris Denove.[2] Denove conducted a survey of New York consumers to ascertain their views on whether erythritol was artificial. Dkt. 78-2 at 2–3. The consumers were expressly told that "the manufacturer (and even the government) relies heavily on what the consumer believes based on *how that sweetener is manufactured*." *Id.* at 6 (emphasis added). They then were given a description of the manufacturing processes for three sweeteners (cane sugar, erythritol, and aspartame), without being provided the name of the sweetener in question, and were asked whether they thought it was natural or artificial. *Id.* at 6–8. 52% of respondents labeled erythritol as artificial, compared to 5% for cane sugar and 88% for aspartame. *Id.* at 9.

The survey is potentially probative of whether a reasonable consumer would think that the manufacturing *process* for erythritol is artificial. But the missing link in Zinger's argument is whether a reasonable consumer would believe that the manufacturing process is what is important in determining whether a given ingredient is artificial. The survey participants were led to consider the process of manufacturing and given details about that process. *See id.* at 6–7 (starting each description with "The process begins . . ."). So the survey does not shed any light on that missing link, and Zinger does not point to any other evidence that would.

The Denove report at issue here is similar to the expert report at issue in *Bustamante*. There, the Second Circuit affirmed the exclusion of an analogous consumer-perception study. The Court agreed with the trial court that the questions were biased and leading, like Denove's focus on the

---

[2] Zinger mentions the Denove report only in passing in her opposition brief. Dkt. 108 at 14. Her reliance on it is thus arguably waived. But the Court need not determine the waiver question, given that the report does not create a genuine dispute of material fact.

manufacturing process, and thus were subject to exclusion under Rule 702 and *Daubert*. *Busta-mante*, 100 F.4th at 428–29. But the Court went on to note that even ignoring those methodological failures, the district court reasonably concluded that given the expert's choices in framing the questions, the answers given in response "provide[d] no useful information about how a reasonable consumer understands 'All Natural.'" *id.* at 430 (quoting *In re KIND LLC "Healthy and All Nat-ural" Litig.*, 627 F. Supp. 3d 269, 289 (S.D.N.Y. 2022)). The same principles apply here.

And just as in *Bustamante*, the question isn't something so obvious or commonsense that Zinger didn't need to supply any evidence for it. What is viewed as "artificial" by consumers is not always an easy question to answer. We might all agree that the water that falls as rain from the sky is not "artificial," but what if the water was synthesized using a laboratory combination of hydrogen and oxygen gases? A chemist would say there's no difference, but would a reasonable consumer? The Court could not intuit the answer without record evidence. Zinger has failed to provide any in this case.

Zinger has forfeited any reliance on her deposition or on consumer complaints based on her failure to raise them in her opposition brief. *See* Dkt. 108 at 13–14 (omitting them from the list of evidence she claims creates a genuine dispute of material fact). Zinger did not even attach her deposition transcript to her opposition brief; the Court only has the deposition excerpts that *Bai* submitted in opposition to the motion for class certification. But even to the extent the Court con-siders either type of evidence, they do not move the needle.

In her deposition, Zinger noted that erythritol "could be natural" because it "could be found in fruit." Dkt. 74-4 at 151:9–13. While she noted that it was "manufactured in . . . the lab," *id.* at 150:17–18, she did not state that the manufacturing process was the sole or primary consideration in determining whether a given ingredient was "artificial." So the deposition testimony is entirely unhelpful.

Zinger did attach three internal reports about phone calls from consumers who complained about the inclusion of erythritol despite the "No Artificial Sweeteners" labeling. Dkts. 108-7 at 2, 108-8 at 2, 108-9 at 2. They are not referenced anywhere in the argument section of Zinger's brief and any argument based on them is therefore forfeited. *See Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 370 n.7 (S.D.N.Y. 2014); *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022). And even if they were in play, Zinger does not explain why the unsworn, out-of-court statements by nonparties to the case would be admissible. *See* Fed. R. Evid. 801, 802; *see also* Dkt. 115 ¶ 121 (Bai arguing that the documents are inadmissible hearsay). But in any event, the comments don't move the needle for Zinger. Three isolated comments, with no context, about products that have been sold to scores of consumers, can't suffice to show that the statements at issues are "likely to mislead a reasonable consumer acting reasonably under the circumstances," especially since Zinger's own evidence shows that many consumers have idiosyncratic beliefs. *See* Dkt. 78-2 at 9 (5% of consumers believe that cane sugar is artificially manufactured). One consumer hung up after the company representative asked for more information. Dkt. 108-8 at 2. Another was satis-fied after the representative offered her a coupon for a free 6-, 8-, or 12-pack of beverages. Dkt. 108-7 at 2. And the third was satisfied even without getting coupons after he was told someone

would call back to discuss his concerns. Dkt. 108-9 at 2. None of the three consumers who called explained what about erythritol made it artificial; one just said he had "look[ed] it up on the internet," *id*, and the others did not even explain the origin of their complaint. Without that detail—or any evidence that the complaints were widespread beyond those three individuals or representative of a reasonable consumer—the reports do not create a genuine dispute of material fact, especially in the absence of even a shred of analysis from Zinger on the topic.

Without evidence of what definition a reasonable consumer would ascribe to "artificial" in a label that states "no artificial sweeteners," Zinger's claim cannot survive summary judgment. *See Bustamante*, 100 F.4th at 434 ("Without evidence of a reasonable consumer's understanding of 'All Natural,' plaintiffs cannot succeed on their claims at summary judgment."). And since Zinger lacks a claim herself, the Court need not consider her motion for class certification. *See id*. Bai is entitled to summary judgment.

## CONCLUSION

Bai's motion for summary judgment is GRANTED. The motions for class certification and to exclude the experts under *Daubert* and Federal Rule of Evidence 702 are DENIED AS MOOT. The motions to seal are GRANTED.

The Clerk of Court is respectfully directed to terminate Dkts. 62, 73, 76, 77, 78, 95, and 111, to enter judgment for defendants, and to close the case.

SO ORDERED.

Dated: March 27, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge

5